IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**THOMAS EDWARD CAMPBELL**                                                                  **PLAINTIFF**

**v.**                                                                        **No. 4:15CV169-MPM-DAS**

**LT. SHARON HAMPTON, ET AL.**                                                          **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Thomas Earl Campbell, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that Lt. Sharon Hampton retaliated against him for filing a lawsuit by reinstating several Rule Violation Reports that had previously been administratively dismissed. The defendants have filed a motion [28] for summary judgment; the plaintiff has not responded, and the deadline to do so has expired. The matter is ripe for resolution. For the reasons set forth below, the motion [28] by the defendants for summary judgment will be granted, and judgment will be entered for the defendants.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary

material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994).

It would undermine the purposes of summary judgment if a party could defeat such a motion by simply "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990). In considering a motion for summary judgment, a court must also determine whether the non-moving party's allegations are *plausible*. *Matsushita, supra*. (emphasis added). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

## Undisputed Material Facts

Thomas Edward Campbell is a state inmate in the custody of the Mississippi Department of Corrections ("MDOC"). Campbell received three Rule Violation Reports (RVR's) in the dining hall in Unit 29-E at the Mississippi State Penitentiary – two for "cussing" a guard, and one for failing to obey the order of a staff member. Doc. 15. Campbell testified at the *Spears* hearing that he, indeed, failed to obey the order of staff member Sergeant Barbara Johnson, who threatened to spray him with mace to gain his compliance. *Id.* He alleges that he was just trying to get his high-calorie meal prescribed by a doctor – and that he should not have been punished. *Id.* He also alleges that these three RVR's were dismissed on January 14, 2015.

According to Campbell, he filed a federal lawsuit against medical providers on February 13, 2015, and the next day, on February 14, 2015, Lt. Sharon Hampton, a correctional officer at the Mississippi State Penitentiary, retaliated against him for doing so by "resurrecting" the three previously dismissed RVR's. *Id.* After Campbell was found guilty of these three RVR's, he alleges that Hampton refused to provide him with the completed RVR's, thus preventing him from appealing the guilty findings. *Id.*

Campbell alleges that the three guilty findings, combined with two others for which he was found guilty without investigation, cost him "good time," thus delaying his release. He also alleges that he can no longer earn good time credits to shorten his sentence as a result of these five RVR's.

## No Evidence of Retaliation

As discussed below, Mr. Campbell has only his personal belief that he is the victim of retaliation. Prison officials may not retaliate against prisoners for exercising their constitutional rights.

*Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). On the other hand, courts must view such claims with skepticism to keep from getting bogged down in every act of discipline prison officials impose. *Id*. The elements of a claim under a retaliation theory are the plaintiff's invocation of "a specific constitutional right," the defendant's intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, *i.e.*, "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (citations omitted ), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996). A prisoner seeking to establish a retaliation claim must also show that the prison official's conduct was sufficiently adverse so that it would be capable of deterring a person of ordinary firmness from exercising his constitutional rights in the future. *Winding v. Grimes*, 4:08CV99-FKB, 2010 WL 706515 at 3 (S.D. Miss. Feb. 22, 2010); *citing Morris v. Powell*, 449 F.3d 682, 684–85 (5th Cir. 2006) at 685. A single incident involving a minor sanction is insufficient to prove retaliation. *Davis v. Kelly*, 2:10CV271-KS-MTP (citing *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999), 2:10CV271-KS-MTP, 2012 WL 3544865 *Id.*). Similarly, inconsequential (*de minimis*) acts by prison officials do not give rise to an actionable retaliation claim. *See Morris* at 685.

In this case, Mr. Campbell must prove that he engaged in constitutionally protected activity (seeking redress for grievances through a lawsuit), faced significant adverse consequences (reinstatement of the Rule Violation Reports), and that such action was taken "in an effort to chill [his] access to the courts or to punish [him] for having brought suit." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir.), *cert. denied*, 513 U.S. 926, 115 S. Ct. 312, 130 L. Ed. 2d 275 (1994); *see also Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112, 1114 (5th Cir.1987). The showing in such cases must be more than the prisoner's "personal belief that he is the victim of retaliation." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).

The Fifth Circuit has made clear the dangers of permitting retaliation claims to proceed in the absence of factual allegations to support an inference of a retaliatory motive. In *Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988), the plaintiff, Daniel Johnson, had filed numerous lawsuits against administrators and staff within the Texas prison system. The defendants then denied Johnson's request to have his custody status upgraded, and Johnson alleged that the denial was in retaliation for filing his previous suits. *Id.* The Fifth Circuit rejected Johnson's claim – and explained why courts must insist upon specific factual allegations to support an inference of retaliation:

> If we were to hold that [Johnson] by his allegations in this case had established a case which was entitled to the full panoply of discovery, appointment of counsel, jury trial and the like, we would be establishing a proposition that would play havoc with every penal system in the country. Prison administrators must classify and move prisoners. It is a virtual truism that any prisoner who is the subject of an administrative decision that he does not like feels that he is being discriminated against for one reason or another, such as the past filing of a grievance, a complaint about food or a cellmate, or a prior complaint that he was not being treated equally with other prisoners. If we were to uphold the further pursuit of [Johnson's] complaint in this case we would be opening the door to every disgruntled prisoner denied the next level of trustyship, reassigned to another prison job, moved to another cell, [or] claiming his shoes were uncomfortable, to bring such a suit.

*Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988). Similarly, the Fifth Circuit has not created a rule which

> [restricts] actions [by prison staff] legitimately motivated by concerns of prison order and discipline . . . .
>
> The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.
>
> *To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them*, trial courts must carefully scrutinize these claims. To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident—such as the filing of disciplinary reports as in the case at bar—would not have occurred. *This places a significant*

> *burden on the inmate*. Mere conclusionary allegations of retaliation will not withstand a summary judgment challenge. The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred. *Although we decline to hold as a matter of law that a legitimate prison disciplinary report is an absolute bar to a retaliation claim, the existence of same, properly viewed, is probative and potent summary judgment evidence*, as would be evidence of the number, nature, and disposition of prior retaliation complaints by the inmate.

*Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)(emphasis added)(internal footnotes and citations omitted).

Prisoners routinely file grievances against prison staff on an ongoing basis, for any number of reasons. As such, it is not uncommon for a prisoner to file a grievance, then receive a Rule Violation Report sometime thereafter. Thus, to avoid turning nearly every charge of prison rule violations against a prisoner into a claim of retaliation, courts insist upon additional allegations or evidence to substantiate a retaliation claim, such as prison staff issuing threats of disciplinary action if an inmate files further grievances, staff members pulling an inmate aside to threaten him, members of prison staff perpetrating unprovoked acts of violence against an inmate, or prison staff members wholly fabricating charges of prison rule violations against an inmate. *See Decker v. McDonald*, 2010 WL 1424322 (E.D. Tex. 2010) (Magistrate Judge's Report and Recommendation) (unpublished), adopted by the District Court, 2010 WL 1424292 (E.D. Tex.) (unpublished).

In this case, Mr. Campbell has only his personal belief that he is the victim of retaliation. He has not produced "direct evidence of motivation or, the more probable scenario, 'allege[d] a chronology of events from which retaliation may plausibly be inferred,'" *Woods v. Smith*, 60 F.3d 1161, 166 (5th Cir. 1995), one that includes more than simply an exercise of a constitutional right followed by an adverse consequence. *Decker, supra.* During his *Spears* hearing, Campbell conceded the validity of the allegations in the Rule Violation Reports; he merely objects to the alleged reinstatement of the charges after their dismissal on procedural grounds.

Campbell has not identified a motive for Lt. Hampton to retaliate against him, other than his February 13, 2015 federal lawsuit. Lt. Hampton could hardly have been aware of Campbell's February 13, 2015, complaint by the next day (the date she allegedly renewed the three previously dismissed RVR's), as she was not named as a defendant in the complaint and would not have received notice of the filing from the court. Indeed, the *Spears* hearing, to determine whether the case should even proceed and process should issue, did not occur until April 9, 2015. *See Campbell v. Brown* 1:15CV35-GHD-DAS*,* Doc. 14. Further, as Lt. Hampton was not a defendant in that case, the plaintiff has not explained why she might be motivated to retaliate against him for filing it. *Campbell v. Brown,* 1:15CV35-GHD-DAS. Mr. Campbell conceded at the *Spears* hearing that he actually committed the infractions, and, "properly viewed, [this testimony] is probative and potent summary judgment evidence" tending to show that Lt. Hampton did not act with a retaliatory motive. *Woods v. Smith, supra*.

Further, Campbell has offered no proof that Lt. Hampton even revived the allegedly dismissed Rule Violation Reports. She was merely the investigator of the rule violations. Corrections Officer IV Barbara Johnson issued the Rule Violation Reports; Patricia Hughes delivered them to Campbell, and Delois Ray stood as the Hearing Officer on January 14, 2015. Doc. 28-1 at 2-4. It appears that the Rule Violation Reports were not dismissed, but merely delayed "due to offender moving and investigation" and "disciplinary workload." Do. 28-1 at 2-4. Her actions are consistent with "[a member of prison staff] legitimately motivated by concerns of prison order and discipline." *Woods v. Smith, supra*.

Finally, though Mr. Campbell has argued that he "lost" good time credits because prison guards abused the Rule Violation Report process, his time sheet reveals that he merely lost Trusty status because he received seven Rule Violation Reports in a year's time. Doc. 28-2 at 2. He has conceded the validity of the three Rule Violation Reports at issue. According to his time sheet, he has

lost only 90 days of earned time, which occurred on September 12, 2012, because of a Rule Violation Report. This loss occurred long before the events relevant to this suit. He has lost no time since, but, instead, was removed from Trusty status. Though his removal from Trusty status has prevented him from *accruing* Trusty Earned Time, he has not *lost* any time previously accrued as a result of the most recent Rule Violation Reports. Thus, Campbell's allegations regarding retaliation must be dismissed for failure to state a claim upon which relief could be granted.

## Conclusion

For the reasons set forth above, the motion by the defendants for summary judgment will be granted, and judgment will be entered for the defendants in all respects. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 30th day of August, 2017.

        **/s/ MICHAEL P. MILLS**
        **UNITED STATES DISTRICT JUDGE**
        **NORTHERN DISTRICT OF MISSISSIPPI**